## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

IN RE:      **WILLIAM E. DOUGHTY, SR.**              **CHAPTER 11**
            **Debtor**                          **CASE NO. 09-11148-DWH**

## SECOND AMENDED PLAN OF REORGANIZATION

Unless otherwise defined, the capitalized terms contained in this Second Amended Plan of Reorganization (the "Plan") shall have the same meanings as described in the Second Amended Disclosure Statement (the "Disclosure Statement"). All capitalized terms used in the Plan not defined herein or in the Disclosure Statement, but which are defined in the Bankruptcy Code, shall have the respective meanings ascribed in the Bankruptcy Code. All capitalized terms used but not defined in the Plan, in the Disclosure Statement or in the Bankruptcy Code shall have the respective meanings ascribed in the Bankruptcy Rules.

### ARTICLE I

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides the Claims against and Interests in the Debtor into various Classes pursuant to Bankruptcy Code Section 1122. Set forth below is a description of the general Classes of Claims against and Interests in the Debtor and their treatment under the Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class to the extent that the Claim or Interest qualifies within the description of that different Class.

**Class 1:**      **Administrative Claims**

**Class 2:**      **Priority Claims**

Page 1 of 15

**Class 3:**       **Secured Claims of Wells Fargo**

**Class 4:**       **Secured Claims of BancorpSouth Bank/Don Coleman**

**Class 5:**       **General, Unsecured Claims**

## ARTICLE II

## TREATMENT OF CLAIMS AND INTERESTS

The Claims as classified in Article III shall be satisfied as follows:

**Class 1:  Administrative Expense Claims.**

This Class consists of the administrative expenses and claims of professionals and of the United States Trustee under §503(b) of the Bankruptcy Code and all fees and charges assessed against the Debtor under Title 28 of the United States Code.  The compensation of professionals, such as attorneys and accountants, is subject to approval by the Court.  The timing of payment to such professionals for compensation for services rendered and reimbursement of expenses will be made as authorized and allowed by the Court.  The Court will review all requests for compensation and reimbursement of expenses.

All Class 1 expenses and claims for fees will be paid as provided for in future Court Orders, or as may be agreed upon, except that fees due to the Office of the United States Trustee will be paid as and when due until this Case is closed, converted or dismissed.

**Class 2:**       **Priority Claims**

Priority claims of the IRS and Mississippi State Tax Commission, if any, will be paid, with interest, as required by the Bankruptcy Code.

**Class 3:**      **Secured Claim of Wells Fargo Home Mortgage ("Wells Fargo")**

Wells Fargo is secured by a first mortgage upon the Debtor's residence that is jointly owned with his spouse. In order to pay the claim of Wells Fargo, the Debtor will, upon entry of an order of confirmation, commence payment of the normal monthly payments to Wells Fargo of principal and interest that are called for in the Wells Fargo note and deed of trust. Interest on the debt shall be fixed at four percent (4%) for the remaining life of the entire loan, and all defaulted payments will be added to the end of the existing Wells Fargo obligation so that it is extended by the same number of months as to which defaults exist. The remaining terms of the Wells Fargo debt instruments shall remain unaltered.

This claim is secured.

**Class 4:**      **Secured Claims of BancorpSouth Bank/Don Coleman**

Prior to the filing of the Petition, BancorpSouth Bank held a lien and security interest upon the Debtor's truck, a 2005 Chevrolet Silverado Pickup. The Debtor is advised that Mr. Coleman has purchased the BancorpSouth Bank note and that he is the lienholder in connection with the truck.

Debtor has assigned the truck a very liberal value of $9,000.00. In order to satisfy this claim, the Debtor will pay the $9,000.00 secured claim in equal monthly installments over thirty-six (36) months, commencing the month following entry of an order of confirmation of the Plan, within interest at six percent (6%), without prejudice to any claims the Debtor may have.

This claim is impaired.

**Class 5:**      **General, Unsecured Claims**  The Debtor will devote his projected disposable income, for the five-year life of the Plan, to payments for unsecured creditors.

## ARTICLE III

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All insurance policies under which the Debtor is the insured party shall be deemed assumed as of the Confirmation Date.  Other than insurance policies, the Debtor has no executory contracts or unexpired leases to assume or reject.

## ARTICLE IV

### MODIFICATION OF THE PLAN

The Debtor may amend or modify the Plan at any time prior to the entry of an Order Confirming the Plan without the approval of the Court.  Subsequent to the entry of the Confirmation Order,  the Debtor may modify the Plan before substantial consummation of the Plan with the approval of the Court.

## ARTICLE V

### WITHDRAWAL OF THE PLAN

The Debtor reserves the right to revoke and withdraw the Plan as the plan of reorganization for the Chapter 11 case, at any time prior to the Confirmation Date if conditions set forth in the Plan cannot be satisfied for any reason after the Confirmation Date, at any time up to the Effective Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.

## ARTICLE VI

### RETENTION OF JURISDICTION

Subsequent to Confirmation of the Plan, the Court will retain jurisdiction to hear and determine all Claims against the Debtor and to hear and to enforce all causes of action which exist

on behalf the Debtor, including, without limitation, all turnover and avoidance causes of action granted to the Debtor and that will be owned and possibly pursued by the Debtor, post-confirmation under the Bankruptcy Code.   The Court will also retain jurisdiction to construe and apply the provisions of the Plan, including the administration and implementation of the Plan, to enter orders in aid of consummation of the Plan, to effectuate the abandonment of assets, if necessary, to issue any orders in connection with the Plan in these proceedings, to hear and decide applications for compensation and reimbursement of expenses, to resolve objections to Claims, adversary proceedings, and matters pending independently of the Plan and to close the Chapter 11 case.

## ARTICLE VII

## LIQUIDATION ANALYSIS & FEASIBILITY

**A.**          **Feasibility of the Plan**

The Debtor's Monthly Operating Reports provide current information on the Debtor's financial position and assets and liabilities.   During the Case, the Debtor has remained current on all of his post-petition obligations, including insurance and taxes.   The Debtor believes that his monthly income is and will be sufficient to satisfy the Claims of Creditors as proposed in the Plan.

**B.**          **Liquidation Analysis**

Section 1129 of the Bankruptcy Code provides that the Court may confirm the Plan only if certain requirements are met.   One of these requirements is that each non-accepting Holder of an Allowed Claim must receive or retain under the Plan, on account of such Claim, property as of the Effective Date of the Plan at least equal to the value such Holder would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

For the purposes of the following discussion, it is assumed that a Chapter 7 trustee would seek to maximize the value of the Debtor's estate by attempting to sell the assets of the Debtor. However, the Debtor believes that the circumstances surrounding liquidation under Chapter 7 would lead to selling conditions which would substantially detract from the total value returned to the Debtor's estate. Further, there is no assurance that a Chapter 7 trustee will sell the assets, which would cause a forced liquidation at even more depressed prices. The following are some, but not all, of the consequences the Debtor believes would result from Chapter 7 liquidation:

1.    Substantial Chapter 7 administrative costs relating to professional fees, broker commissions, sales commissions and other associated expenses would occur.

2.    The sale of the Debtor's assets under the time pressures and adverse publicity related to Chapter 7 liquidation would create a difficult, if not impossible, selling environment and would result in a transaction consummated as a substantial discount to fair market price.

3.    Adverse tax consequences may further reduce the value returned to the estate from a sale of the Debtor's assets. An asset sale pursuant to Chapter 7 liquidation could potentially result in adverse federal income tax consequences to the estate.

4.    A Chapter 7 trustee will be unfamiliar with the Debtor's assets at the time of his/her appointment and is not likely to be in a position to market the Debtor's assets during the liquidation period very effectively.

5.          A Chapter 7 trustee may consider this Case a "no asset" case and provide

no distribution to Unsecured Creditors.

**C.          Plan Alternatives**

The Debtor has considered various alternatives to the Plan.  For the reasons set forth

herein, the Debtor believes that to maximize the potential value of the Debtor and maximize the

return to creditors, the Plan is the most desirable and beneficial.

<u>**ARTICLE VIII**</u>

<u>**TAX CONSEQUENCES**</u>

**A.          General**

Under the Internal Revenue Code of 1986, as amended (the "Tax Code") and regulations

promulgated thereunder (the "Regulations"), there are certain significant federal income tax

consequences associated with the Plan.  Certain of these consequences are discussed below.  The

tax consequences described below are subject to significant uncertainties because of (i) the

complexity of the transactions contemplated by the Plan; (ii) the uncertainty as to the tax

consequences of events in prior years, including changes made by the Bankruptcy Tax Act of

1980 ("BTA80"), the Tax Reform Act of 1985 ("TRA85"), the Tax Reform Act of 1986

("TRA86"), the Omnibus Reconciliation Act of 1987 ("ORA87"), the Technical and

Miscellaneous Revenue Act of 1988 ("TAMRA"), the Omnibus Budget Reconciliation Act of

1989 ("ORA89"), the Revenue Reconciliation Act of 1990 ("RRA90") and the Revenue

Reconciliation Act of 1993 ("RRA93"); (iii) the differences in the nature of the Claims of various

Claimants, their taxpayer status, residence and methods of accounting (including Claimants

within the same Class), (iv) prior actions taken by Claimants with respect to their Claims; and (v)

the possibility that events or legislation subsequent to the date hereof could change the federal

tax consequences of the transactions.  There may also be state, local or foreign tax issues that

may affect particular Claimants.

HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR TAX

ADVISORS RESPECTING THE INDIVIDUAL TAX CONSEQUENCES OF THE

TRANSACTIONS CONTEMPLATED UNDER OR IN CONNECTION WITH THE PLAN,

INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

**B.**          **Tax Consequences to Claimants**

The tax consequences of the implementation of the Plan to a Claimant will depend in part

on (i) whether the Claimant's Claim constitutes a security for federal income tax purposes, (ii)

whether the Claimant reports income on the accrual basis, (iii) whether the Claimant receives

consideration in more than one tax year, (iv) whether the Claimant is a resident of the United

States, and (v) whether all the consideration received by the Claimant is deemed to be received

by that Claimant as part of an integrated transaction.  The federal tax consequences upon the

receipt of Cash and notes allocable to interest are discussed below.

**C.**          **Gain or Loss on Exchange**

The Debtor does not believe that any of the creditors' Claims will constitute tax

securities.  Whether a debt instrument constitutes a security is based on the facts and

circumstances surrounding the origin and nature of the debt and its maturity date.  Generally,

claims arising out of the extension of trade credit have been held not to be securities.

Instruments with a five-year term or less also rarely constitute securities.  Accordingly, a

Claimant will recognize gain or loss on the exchange of his existing Claim (other than a Claim

for accrued interest) for any consideration. The amount of such gain or loss will equal the difference between (i) the "amount realized" in respect of such Claim and (ii) the adjusted tax basis of the Claimant in such Claim. Pursuant to Section 1001 of the Tax Code, the "amount realized" will be equal to the sum of the Cash plus the fair market value of any other property received in such exchange.

1. **Receipt of Cash.** A Claimant who receives cash in full satisfaction of his Claim will be required to recognize gain or loss on the exchange. The Claimant will recognize gain or less equal to the difference between the "amount realized" in respect of such Claim and the adjusted tax basis of the Claimant in the Claim, and the tax treatment of the exchange will parallel the tax treatment set forth under above.

2. **Determination of Character of Gain or Loss.** In the case of a Claimant whose existing Claim does not constitute a capital asset, the gain or loss realized on the exchange will give rise to ordinary income or loss. In the case of a Claimant whose existing Claim constitutes a capital asset in his hands, the gain or loss required to be recognized will generally be classified as a capital gain or loss, except to the extent of interest. Any capital gain or loss recognized by a Claimant will be long-term capital gain or loss with respect to those Claims for which the holding period of the Claimant is more than twelve (12) months, and short-term capital gain or loss with respect to such Claims for which the holding period of the Claimant is twelve (12) months or less.

3.  **Receipt of Interest**. The BTA80 reversed prior law by providing that consideration attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the Claimant's existing claims are capital assets in his hands and the exchange is pursuant to a tax reorganization.  A Claimant who, under his accounting method, was not previously required to include in income accrued but unpaid interest attributable to his existing Claims, and who exchanges his interest Claim for cash, other property or Stock, or a combination thereof, pursuant to the Plan will be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that Claimant realizes an overall gain or loss as a result of the exchange of his existing Claims.

**D.**   **Backup Withholding**

Under the Tax Code, interest, dividends and other "reportable payments" may, under certain circumstances, be subject to "backup withholding" at a thirty-one percent (31%) rate. Withholding generally applies if the holder: (i) fails to furnish his social security number or other taxpayer identification number ("TIN"), (ii) furnishes an incorrect TIN, (iii) fails to report interest or dividends, or (iv) under certain circumstances fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct number and that he is not subject to backup withholding.

**BECAUSE THE FINAL OUTCOME DEPENDS SO MUCH ON EACH INDIVIDUAL CLAIMANT'S SITUATION, IT IS IMPERATIVE THAT EACH**

**CLAIMANT SEEK INDIVIDUAL TAX COUNSEL FOR ADVICE ON HIS**

**PARTICULAR SITUATION.**

## ARTICLE IX

### SOLICITATION OF ACCEPTANCES FOR THE PLAN

Although this Disclosure Statement provides information regarding the assets, liabilities

and the general financial posture of the Debtor and the potential benefits that might accrue to

Holders of Claims and Interests in the Debtor upon Confirmation of the Plan, the Disclosure

Statement neither guarantees nor purports to represent the amount or percentage of each Allowed

Claim that would be realized under the Plan.  Despite this uncertainty, which is inherent in any

Plan, the Debtor believes that the Plan will provide each Holder of a Claim with an opportunity

to receive greater benefits than any other alternative.

As explained more fully herein above, before the Plan may be confirmed by the Court, the

Court must find that the criteria set forth in the Bankruptcy Code have been met, including the

requirement that the Plan must be accepted by an impaired Class.

## ARTICLE X

### MEANS FOR EXECUTION OF THE PLAN

The Debtor will fund the Plan from his income received from employment.

## ARTICLE XI

### RATIFICATION OF THE PLAN

Alterations or modifications of the Plan may be approved by the Court without notice to

Creditors if the Court finds that such alterations or modifications do not materially or adversely

affect the interests of the Creditors.  If any alterations or modifications of the Plan are proposed

which Court finds to materially or adversely effect the interest of Creditors, notice and

description of such alteration of modification shall be given to all Creditors adversely affected.

## ARTICLE XII

## INVALIDATION OF LIENS AND DISCHARGE

All liens securing Claims which are not Allowed pursuant to the provisions of the Plan or

Bankruptcy Code Sections 502 and 506 shall be invalidated and deemed null and void and of no

further force and effect.   The provisions of the confirmed Plan shall bind all Creditors and

parties in interest, whether or not they accept the Plan and shall discharge the Debtor from all

claims that arose prior to Confirmation.  The distributions provide under the Plan shall be in

exchange for and in complete satisfaction, discharge and release of all Claims and Interests

regarding any of the Debtor's assets or properties, including Claims arising after the date of filing

of the Petition and prior to Confirmation.  Unless otherwise specifically provided to the contrary

herein or in the Confirmation Order, on or after Confirmation, all Holders of Claims or Interests

shall be precluded from asserting any Claim against the Debtor or his assets or properties.

The Debtor shall be granted a conditional discharge by the Confirmation of the Plan.  The

discharge shall be granted upon the condition that the Debtor complete all Plan payments.  The

Bankruptcy Case may be closed before all payments are made.

## ARTICLE XIII

## REVESTING OF PROPERTY

Except as otherwise provided herein, property of the Debtor shall revest in the

Reorganized Debtor on the Effective Date.  Subsequent to the Effective Date, the Reorganized

Debtor may buy, use, acquire, and dispose of property, free of any restrictions contained in the

Bankruptcy Code.

## ARTICLE XIV

## UNITED STATES TRUSTEE'S FEES

The Debtor shall timely pay to the United States Trustee any and all pre- and post-

confirmation quarterly fees as required by 28 U.S.C. § 1930(a)(6) until such time as this case is

converted, dismissed or closed by the Court.  Additionally, the Debtor shall timely submit to the

United States Trustee pre- and post-confirmation Monthly Operating Reports in the format

prescribed by the United States Trustee until such time as this case is converted, dismissed or

closed by the Court.

## ARTICLE XV

## CONCLUSION

In order for the Bankruptcy Court to confirm the Plan, the Code requires, among other things,

that the Plan be proposed in good faith; that the Debtor discloses specified information concerning

payments or promises to insiders; that the Plan comply with the applicable provisions of Chapter 11

of the Bankruptcy Code; that, if there is one impaired Class of Creditors, at least one impaired Class

of Claims accepts the Plan; that Confirmation of the Plan is not likely to be followed by the need for

further reorganization or liquidation of the Reorganized Debtor; that the Plan is in the best interest

of each dissenting Creditor and that the Plan is fair and equitable to, and does not discriminate

unfairly against, each non-accepting Class of impaired Claims.  The Debtor believes that each

requirement has been met, and the Debtor urges you to accept the Plan.

DATED, this, the 25th day of March, 2010.

Respectfully submitted,

**WILLIAM E. DOUGHTY, SR.**

By His Attorneys,
HARRIS JERNIGAN & GENO, PLLC

By: _____
Craig M. Geno

OF COUNSEL:

Craig M. Geno, Esq.; MSB No. 4793
Jeffrey K. Tyree, Esq.; MSB No. 9049
Melanie T. Vardaman, Esq.; MSB No. 100392
HARRIS JERNIGAN & GENO, PLLC
587 Highland Colony Parkway (39157)
P. O. Box 3380
Ridgeland, MS 39158-3380
601-427-0048 - Telephone
601-427-0050 - Facsimile
F:\Users\Bankrupt\Doughty, Bill\Plan-DS\2nd Amended Plan.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via Notice of Electronic Filing and/or U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing instrument to the following:

Sammye S. Tharp, Esq.
Office of the United States Trustee
Sammye.S.Tharp@usdoj.gov

THIS the 25th day of March, 2010.

_____
Craig M. Geno